## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23529-Civ-WILLIAMS/TORRES

K&L EXPORTS, CORP.,
a Florida corporation,

        Plaintiff,

v.

CORPORACION VENEZOLANA DE
COMERCIO EXTERIOR, S.A. a/k/a
CORPOVEX, a Wholly Owned Subsidiary
and Adj. Agent of the Bolivarian Republic
of Venezuela, a Foreign Sovereign,

        Defendant.
_____/

## REVISED REPORT AND RECOMMENDATION ON
## PLAINTIFF'S RENEWED MOTION FOR FINAL DEFAULT JUDGMENT

This matter is before the Court on K&L Exports, Corp.'s ("Plaintiff") renewed motion for final default judgment against Corporacion Venezolana de Comercio Exterior, S.A. a/k/a Corpovex ("Defendant"). [D.E. 23]. No response was filed in opposition and the time to do so has passed. This Court previously considered this motion, [D.E. 24], but Judge Williams subsequently found that Plaintiff's objection raised new matters that warranted reconsideration in a revised Report and Recommendation. [D.E. 26]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, the objection, the relevant authorities, and

1

the record presented, Plaintiff's motion for final default judgment should be **GRANTED in part** and **DENIED in part**.[1]

## I.   BACKGROUND

Plaintiff filed its original complaint, alleging two counts for breach of contract, and thereafter served it on Defendant. When Defendant failed to respond to the lawsuit in a timely fashion, Plaintiff successfully moved the clerk for an entry of default. After the default was entered, Plaintiff then filed a motion for a final default judgment against Defendant, but the Court declined to grant that motion because the complaint failed to include essential jurisdictional allegations. Plaintiff fixed this technical deficiency in its amended complaint and again moved this Court to enter a default judgment against Defendant on that amended complaint.

On review of that second motion, this Court questioned the propriety of exercising subject matter jurisdiction over this case because Defendant is a wholly owned subsidiary of the Bolivarian Republic of Venezuela. Accordingly, this Court found Plaintiff's argument in favor of jurisdiction unpersuasive and recommended that Plaintiff's motion be denied on that basis. Plaintiff timely filed an objection to this Court's ruling and therein expanded its subject matter jurisdiction argument. Because Judge Williams found that Plaintiff's jurisdictional elaboration raised "new matters," she returned Plaintiff's objection, along with its underlying motion for default judgment, back to the undersigned for reconsideration. This Revised Report

---

[1]   On February 17, 2021, the Honorable Kathleen Williams referred Plaintiff's motion to the undersigned Magistrate Judge for disposition. [D.E. 16]. On January 19, 2022, Judge Williams returned Plaintiff's motion to the undersigned Magistrate Judge for disposition in light of Plaintiff's objection. [D.E. 26].

and Recommendation follows full consideration of the subject matter jurisdiction question and the supplemental citations included in Plaintiff's objection.

## *II. APPLICABLE PRINCIPLES AND LAW*

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default. *See* Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the Court must then ascertain

the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). Rule 55 does not require an evidentiary hearing on the appropriate amount of damages, and it is within the Court's discretion to choose whether such a hearing should take place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

### III. ANALYSIS

Plaintiff seeks a final default judgment for two counts of breach of contract against "a corporate entity wholly owned by the Bolivarian Republic of Venezuela[.]". [D.E. 19 at ¶ 2]. Accordingly, before proceeding to the merits of Plaintiff's motion, we must be certain that subject matter jurisdiction exists over this case. If so, then the Court may assess whether the Defendant is liable by default and what compensation is due to Plaintiff. Each step in that analysis will be explored in turn.

    A.    *<u>The Court has subject matter jurisdiction.</u>*

Plaintiff contends that the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1330, a statute more commonly known as the Federal Sovereign Immunities Act ("FSIA"). *See Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (holding that § 1330 "grants federal courts jurisdiction over civil actions against foreign

4

states" and "carves out certain exceptions to its general grant of immunity."). The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in" certain enumerated exceptions. 28 U.S.C. § 1604.

Through the FSIA, Congress has given district courts original jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). "Congress[ ] inten[ded] that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992) ("The [FSIA] establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state.").

Under the FSIA, it is well established that "a foreign state is presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). To overcome the presumption, a plaintiff must "produc[e] evidence that 'the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions.'" *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009) (quoting *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000)). "Whether the plaintiff has satisfied his burden of production in this regard is determined by looking at 'the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties.'" *Id.* at 1313 (quoting

5

*In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008)) (alteration in original). If the plaintiff "has asserted facts suggesting that an exception to foreign sovereign immunity exists, the party arguing for immunity . . . bears the burden of proving by a preponderance of the evidence that the exception does not apply." *Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999). That means, before a final determination can be made with respect to final default judgment, there must be a "statutory exception to jurisdictional immunity [that] applies to the foreign state." *In re RMS Titanic, Inc.*, 569 B.R. 825, 828 (Bankr. M.D. Fla. 2017).

Plaintiff claims that jurisdiction exists under the commercial-activity exception to the FSIA. That exception provides jurisdiction over a foreign state or its instrumentalities if one of three clauses apply:

> the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018) (quoting 28 U.S.C. § 1605(a)(2)). If a government or instrumentality engages in commercial activity, courts look to "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce[.]" *Weltover,* 504 U.S. at 614 (quotation marks and citations omitted). And "when a foreign government acts, not

as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Id.*

Plaintiff argues that the third clause of the commercial-activity exception applies here because breaches of contracts, which took place in Venezuela, resulted in the failure to make payment in Miami, Florida. For jurisdiction to exist under this clause, the lawsuit must be based upon an "act" by a foreign sovereign that (1) took place outside the territory of the United States, (2) was taken in connection with a commercial activity, and (3) caused a direct effect in the United States. *See Devengoechea*, 889 F.3d at 1224.

Satisfying the first element of this commercial activity exception is relatively straightforward because the "act" forming the basis of this lawsuit is Defendant's decision to breach two contracts. According to the amended complaint and its exhibits, the decision to breach the contracts took place in Caracas, Venezuela – i.e., outside the territory of the United States. Satisfying the second element is no more difficult because purchasing elevators and fibrecement coating for the construction of a building is the type of activity that any private player could engage in. Thus, Defendant's activity is clearly "commercial" under the FSIA. *See Weltover*, 504 U.S. at 614 (defining "commercial" activity for FSIA purposes). And so, with the first two elements satisfied, the final question in this jurisdictional inquiry is whether Defendant's foreign commercial act caused a "direct effect" in the United States.

A direct effect under the FSIA is one that follows "as an immediate consequence of the defendant's . . . activity." *Weltover*, 504 U.S. at 618 (quotations

and citation omitted). The effect must be more than "purely trivial" or "remote and attenuated," but it need not be a substantial or foreseeable effect. *Id.* In making this evaluation, courts "'often look to the place where the legally significant acts giving rise to the claim occurred' in determining the place where a direct effect may be said to be located." *Id.* at 727 (citing *United World Trade v. Mangyshlakneft Oil Production Ass'n,* 33 F.3d 1232, 1239 (10th Cir. 1994)). When assessing direct effects, courts also ask whether the effect was sufficiently "direct" and sufficiently "in the United States" such that Congress would have wanted an American court to hear the case. *Guevara v. Republic of Peru*, 608 F.3d 1297, 1309 (11th Cir. 2010) (quoting *Harris Corp. v. Nat'l Iranian Radio & Television,* 691 F.2d 1344, 1351 (11th Cir. 1982) (internal citation and quotation marks omitted)). Both the Supreme Court and the Eleventh Circuit have held that the failure to pay money that was due in the United States can be a sufficiently direct effect for FSIA purposes. *Weltover*, 504 U.S. at 618-19; *Devengoechea*, 889 F.3d at 1225-26.

In *Weltover*, Argentina issued bonds to creditors that provided for the payment of interest and principal in United States dollars. *Weltover*, 504 U.S. at 609-10. These bonds authorized the creditor to elect to receive payment in London, Frankfurt, Zurich, or New York. *Id.* When the bonds began to mature, Argentina concluded that it lacked sufficient funds to pay the interest and principal due to the creditors. *Id.* Accordingly, Argentina unilaterally extended the time for payment and offered creditors substitute instruments as a means of rescheduling the debts. *Id.* Three creditors – two Panamanian companies and one Swiss bank – who elected to receive

8

their interest and principal payments in New York then sued the Argentine government for breach of contract in the United States District Court for the Southern District of New York. *Id.* The Supreme Court ultimately faced the question whether the commercial-activity exception to the FSIA would permit Argentina to be sued by the bond creditors. *Id.* Reasoning that the lawsuit was based upon the act of a foreign state – i.e., the Argentine government's unilateral decision to not pay a debt when it came due – that occurred outside the territory of the United States in connection with a commercial activity of the foreign state, the Supreme Court found that there was a direct effect in the United States because "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id.* at 618-19. Finding the commercial-activity exception satisfied, the Supreme Court held that the district court properly exercised subject matter jurisdiction under the FSIA. *Id.* at 620.

In *Devengoechea*, the heir to a collection of Simón Bolívar's personal effects began negotiating with the Venezuelan government for the sale of his collection. *Devengoechea*, 889 F.3d at 1217. To that end, the Venezuelan government sent a delegation to the Florida to meet with the heir and inspect his collection. *Id.* During the delegation's time in the United States, they reached an understanding with the heir – essentially, a bailment contract – wherein the collection would be transported to Venezuela for further inspection and, thereafter, the Venezuelan government would either purchase the collection or return it to the heir. *Id.* But five years after it was taken to Venezuela, the Venezuelan government had neither paid the heir nor

9

returned his collection. *Id.* Accordingly, the heir filed suit against the Venezuelan government, seeking payment or the return of his collection. *Id.* Venezuela sought to dismiss the case on sovereign immunity grounds, but the district court denied Venezuela's motion. *Id.* In affirming the order of the district court, the Eleventh Circuit held that the heir's lawsuit was based upon the act of a foreign state – the Venezuelan government's decision to not pay the heir for his collection or otherwise return it to him – that occurred outside the territory of the United States in connection with a commercial activity of the foreign state. *Id.* at 1224. And, relying heavily on *Weltover*, the Eleventh Circuit reasoned that the failure to pay the heir (whom the Venezuelan government knew resided in Florida) for his collection or otherwise return it to him in the United States caused the "direct effect" required by the commercial-activity exception to the FSIA. *Id.* at 1224-26. Therefore, the Eleventh Circuit held that the district court properly exercised subject matter jurisdiction under the FSIA. *Id.* at 1226.

Here, Plaintiff alleges that it entered into two contracts with Defendant. These contracts contemplate an exchange of goods (four elevators and 6,840 square meters of fibrocement coating) for money (collectively, $1,134,229.60 payable in United States Dollars). Under the contracts, the money due to Plaintiff was to be deposited into Plaintiff's account at Ocean Bank in Miami, Florida. But much like the money that was due to be deposited in *Weltover*, the money due to be deposited in Miami has not been forthcoming and this appears to be an immediate consequence of Defendant's foreign commercial act. Thus, Defendant's choice to not pay the money

10

due under the contracts has caused a direct effect in the United States. *See Weltover*, 504 U.S. at 618-19; *Devengoechea*, 889 F.3d at 1224-26.[2]

Based on the foregoing, the amended complaint sufficiently alleges facts to satisfy all three elements of the FSIA's commercial-activity exception. *See Devengoechea*, 889 F.3d at 1224. Therefore, the Court finds that it has subject matter jurisdiction over this case.

### B. *The amended complaint sufficiently alleges two counts for breach of contract.*

Plaintiff alleges two relatively straightforward breach-of-contract claims against Defendant. According to the amended complaint, Defendant traveled to Florida to solicit Plaintiff's participation in a Venezuelan construction project. After meeting to negotiate Plaintiff's participation in the project, the parties allegedly entered into two contracts on August 28, 2015 – one for the purchase of four elevators (the "Elevator Contract") and another for the purchase of 6,840 square meters of fibrocement coating (the "Fibrocement Contract") – that were memorialized in Spanish, translated into English, and attached to Plaintiff's amended complaint. Among other things, these contracts purport to govern the delivery of the "Goods" to Defendant in Venezuela as well as Defendant's obligation to pay Plaintiff for these Goods in the United States.

---

[2] The Court recognizes that its previous opinion relied on other Eleventh Circuit precedent to compel the opposite result. *See, e.g., Guevara*, 608 F.3d at 1309; *Araya-Solorzano v. Gov't of Republic of Nicaragua*, 562 F. App'x 901, 904 (11th Cir. 2014); *Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir. 2005). With the benefit of Plaintiff's full jurisdictional argument, however, the Court is persuaded that *Weltover* and *Devengoechea* more squarely fit our facts and should control.

11

During its performance of the contracts, Plaintiff acquired the Goods from a manufacturer in China and then shipped them via ocean freight in 24 containers to Panama. The Goods were unloaded in Panama in preparation for transshipment to Venezuela, however, that transshipment never occurred.

Pursuant to the contracts, the elevators were to be delivered in Venezuela within 180 from the execution of the Elevator Contract and the fibrocement coating was to be delivered in Venezuela within 90 days from the execution of the Fibrocement Contract. There is no specific allegation concerning the timing of the Goods' arrival in Panama, although Plaintiff does allege that it "complied with all of its obligations" under both the Elevator Contract and the Fibrocement Contract. And so, Plaintiff alleges that it was *Defendant* who breached the contracts. Indeed, Plaintiff attaches two repudiation letters from Defendant to its amended complaint and these letters clearly communicate that Defendant did not intend to honor its payment obligations under the contracts. But these repudiation letters are dated December 7, 2016 – more than 15 months after the contracts were executed. This aspect of the alleged timeline is relevant because, under both contracts, Section 5.3 authorized Defendant to repudiate the contracts if the Goods were delivered more than one month after they were due. By contrast, no provision in either contract expressly permitted Plaintiff to withhold delivery as a penalty for non-payment.

The Court highlights the foregoing to illustrate that the amended complaint, when read in conjunction with its attached exhibits, does not allege the strongest breach-of-contract claim known to modern American law. Had Defendant elected to

defend this action after being properly served, it surely could have raised various defenses to the merits of Plaintiff's claims. But Defendant chose to not respond to this lawsuit, and it is not the Court's role to find every weakness that could conceivably sink Plaintiff's case.

By contrast, at this juncture, it is the Court's role to assess whether the amended complaint sufficiently states two breach-of-contract claims under Florida law.[3] *See, e.g., Venus Concept USA Inc. v. Vitahydr8, LLC*, Case No. 21-cv-22243, 2022 WL 204685, at *2 (S.D. Fla. Jan. 24, 2022). The elements of a breach of contract action under Florida law are (1) a valid contract, (2) a material breach, and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).

Here, despite some issues in the Plaintiff's overall case, the amended complaint plausibly alleges the existence of two valid contracts (i.e., the Elevator Contract and the Fibrocement Contract) as well a material breach of each of those contracts (i.e., nonpayment by Defendant). The amended complaint also plausibly alleges that Plaintiff sustained damages resulting from those breaches. Accordingly, insofar as liability is concerned, the factual allegations in the amended complaint are sufficient; thus, Plaintiff's motion for a final default judgment should be **GRANTED**.

---

[3] Plaintiff correctly notes that the contracts contain choice of Venezuelan law provisions, but Defendant failed to respond and so the record is devoid of any evidence regarding the substance of the applicable Venezuelan law. "Absent proof that foreign law differs from that of Florida, the Court is entitled to presume it is the same." *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1252 (S.D. Fla. 2008) (citing *Nicole v. Nicole-Sauri (In re Estate of Santos)*, 648 So. 2d 277, 284 (Fla. 4th DCA 1995)).

### C. *Damages cannot be calculated on this record, but Plaintiff should be granted leave to supplement its damage calculations.*

Unlike the claims alleged by Plaintiff, which are relatively straightforward, Plaintiff's damage calculations are not adequately discernable. For example, Plaintiff is seeking reimbursement for more than $4,000,000.00 in storage fees that it incurred (through its sub-contractor) as a result of its reliance on Defendant's representation that Defendant would cover "all expenses generated by the delay in [Defendant's] payments." [D.E. 23-3 at 167-70]. But the letter containing this representation is undated, potentially complicating Plaintiff's entitlement to reimbursement to an unknown degree.

Another area in which Plaintiff's damage calculations are muddled relates to the money that it spent in Venezuela – e.g., fees paid, funds deposited for bonds. Plaintiff apparently sent nearly $2,000,000.00 to Venezuela in "initial deposits," but none of those funds have been returned and it is not clear from the record exactly how or why Plaintiff deposited more money in Venezuela than it expected to earn from the contracts.

Moreover, Plaintiff explains in its motion how it enlisted a sub-contractor to perform its obligations under the contracts on a cost-plus basis. Therefore, it was actually the sub-contractor who paid to acquire the Goods in China, ship the Goods across the ocean, store the Goods in Panama, and then ship the Goods back to China. Importantly, it was also the sub-contractor who received a partial refund from the Chinese manufacturer when the Goods were returned. According to Plaintiff's motion, however, the amount of this partial refund was unknown when the motion

14

was filed.  But because the amount of the partial refund is unknown, it is impossible to accurately calculate Plaintiff's damages given that, theoretically, Plaintiff's outstanding sub-contractor liability is equal to the sub-contractor's costs plus 15% *minus* any refund received by the sub-contractor.

In summary, the record does not adequately reflect the basis for Plaintiff's requested damage award.  Therefore, insofar as damages are concerned, Plaintiff's motion for final default judgment should be **DENIED**.  The Court recommends, however, that Plaintiff be granted leave to supplement the record with revised damage calculations that are both well-organized, sworn to by Plaintiff or an expert, and adequate for Rule 55 purposes.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for final default judgment should be **GRANTED in part** and **DENIED in part**, with leave to supplement the record as it pertains to Plaintiff's damages.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  The Court finds good cause to modify the objection period.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634

(11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of February, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge